UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND E. JONES SR.,<br><br>Plaintiff,<br><br>v.<br><br>SWARTHOUT, et al.,<br><br>Defendants. | No. 2:14-cv-01372 WBS DB P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, Raymond E. Jones, Sr., is a state prisoner proceeding pro se and in forma pauperis in an action brought under 42 U.S.C. § 1983. He asserts claims for excessive force and deliberate indifference to medical needs. He alleges that a correctional officer used excessive force to stop him from leaving a room and to remove his handcuffs, which aggravated a preexisting shoulder injury to the point that it required surgery. Further, he alleges that other prison personnel disregarded his need for emergency medical care for his shoulder injury.

Defendants have moved for summary judgment. They argue that his excessive force claim fails because the officer used only *de minimis* force to control him. They also argue that he failed to exhaust his claim for deliberate indifference. As discussed below, the undersigned recommends that the motion for summary judgment be granted and denied in part.

////

////

## I. BACKGROUND

### A. Factual Background

At all times relevant to his amended complaint, plaintiff was incarcerated at California State Prison, Solano ("SOL"). (First Am. Compl. ("FAC") (ECF No. 10 at 2-3[1]).) Plaintiff alleges that on March 28, 2013, his intoxicated cellmate tried to climb onto his bunk and fell off. (Pl.'s Deposition ("Dep.") at 33–34.[2]) In response, defendant Koelling, a correctional officer, went to plaintiff's cell, handcuffed him, and escorted him to the primary clinic. (Id. at 39–41.) The handcuffs were "kind of tight . . . , but . . . [not] that tight." (Id. at 40.) Koelling removed the handcuffs at the clinic. (Id. at 43.) Plaintiff's right shoulder did not hurt at the clinic. (Id. at 41.)

When plaintiff was ready to leave the clinic, Koelling reapplied the handcuffs and escorted plaintiff to the program complex. (Id. at 42–43.) Nothing was unusual about the application of the handcuffs and he did not complain about it. (Id. at 43.)

At the program complex, Koelling placed plaintiff in a holding cell. (Id. at 44.) According to plaintiff, he put his arm through a cutout in the door so that Koelling could remove the handcuffs. (Id. at 45.) Koelling then "got" his hands into a position in which he could remove the handcuffs. (Id. at 45–46; see also Decl. of B. Koelling ("Koelling Decl.") (ECF No. 19-2), ¶ 4.) Koelling's removal of the handcuffs did not hurt his right shoulder. (Dep. at 46.)

Koelling then reapplied the handcuffs and escorted plaintiff to the office of C. Martinez, a correctional lieutenant, who interviewed him about the incident in his cell. (Dep. at 46, 48–49.) The reapplication of the handcuffs did not hurt him. (Id. at 46–47.) Thereafter, Koelling returned plaintiff to the holding cell and removed the handcuffs without incident. (Id. at 49–50.)

After a while, Koelling reapplied the handcuffs and escorted plaintiff back to Martinez's office to be reinterviewed. (Dep. at 50–51.) The reapplication of the handcuffs did not harm him.

////

---

[1] Unless otherwise noted, all page citations refer to the page number at the top, right-hand corner of the electronic version of documents.

[2] Defendants lodged a copy of plaintiff's deposition transcript on May 12, 2017. (See ECF No. 20.)

2

(Id. at 51.)  After that, Koelling escorted him to a correctional sergeant's office without incident.  (Id. at 54–55.)

In the office, Koelling asked plaintiff, who was restrained, to help him identify inmates who had cellphones.  (Id. at 56–58; FAC (ECF No. 10 at 3).)  Plaintiff refused to provide any information and turned to leave the room without permission.  (Dep. at 57–58, 60; FAC (ECF No. 10 at 3).)  According to plaintiff, Koelling then grabbed his right arm near the elbow "very sternly" and "yanked [him] back towards [Koelling]."  (Dep. at 60–61; FAC (ECF No. 10 at 3).)  Koelling did this to "try to prevent [plaintiff] from moving further towards the door."  (Dep. at 62.)  After Koelling grabbed him, he allegedly felt "pain" in his right arm, but did not immediately complain about it.  (Id. at 61–62.)  Before this incident, he did not tell Koelling that he had a preexisting right shoulder injury.  (Id. at 62.)

Koelling escorted plaintiff back to the holding cell.  (Dep. at 79.)  He put his hands through a slot in the door to have his handcuffs removed, which Koelling had unintentionally applied backwards.  (Id. at 79–80, 82; Koelling Decl. (ECF No. 19-2), ¶ 5.)  Because his handcuffs were on backwards, he states that Koelling had to manipulate his hands to be able to access the keyhole.  (Dep. at 79–80.)  According to plaintiff, this involved "bend[ing] [his] wrists and . . . pulling [up] on [his] arms."  (Id. at 80.)  In other words, Koelling allegedly "kept bending the cuffs to tighten against [his] wrists and bend against [his] wrists [sic], but at the same time pulling [him] up."  (Id. at 81.)  Plaintiff adds that Koelling kept doing this even though he told him that it hurt.  (Id. at 82.)  Thereafter, he was taken to administrative segregation and had no further encounters with Koelling.  (Id. at 83.)

On or about April 18, 2013, plaintiff submitted a health care services request.  (Ex. B to Plaintiff's Reply ("Reply") (ECF No. 21 at 63).)  Plaintiff complained that he had increased shoulder pain and that pain medication was not working.  (Id.)  Therefore, he requested diagnostic testing.  (Id.)

On June 6, 2013, defendant Long, a registered nurse, responded to plaintiff's complaints of increased shoulder pain.  (Decl. of D. Long ("Long Decl.") (ECF No. 19-5), ¶ 3.)  Long examined him, found his existing prescription medication adequate, and consulted with a doctor

3

regarding his findings. (Id. ¶¶ 3–5.) The doctor did not recommend any additional treatment at that time, and Long followed his orders. (Id. ¶ 5.)

On the same day, plaintiff wanted correctional officers to sound an alarm due to his allegedly extreme shoulder pain. (Dep. at 96; Decl. of D. Blackwell ("Blackwell Decl.") (ECF No. 19-3), ¶ 3.) Defendant Blackwell, a correctional lieutenant, decided that that was an inappropriate response. (Dep. at 94; Blackwell Decl. (ECF No. 19-3), ¶¶ 4–5.) Instead, he instructed an officer to "call medical." (Dep. at 94.)

On June 7, 2013, plaintiff saw defendant Lahey, a registered nurse, about his complaints of right shoulder pain. (Decl. of P. Lahey ("Lahey Decl.") (ECF No. 19-4), ¶ 3.) Lahey examined him and found that he had "issues with his right shoulder which had been present for approximately one year." (Id. ¶ 5.) Also, Lahey was aware that he had previously been prescribed Naproxen and Tylenol with codeine for pain control. (Id. ¶ 3.) Lahey knew that a doctor had reviewed his case the day before and declined to order further treatment. (Id.) Based on his findings, he referred plaintiff to "a primary care provider on a routine basis." (Id. ¶ 5.) He states that he "did not observe any symptoms or conditions indicating that [plaintiff] required emergency medical care." (Id. ¶ 7.)

Plaintiff filed a health care appeal complaining about the conduct of Long, Lahey, and Blackwell. (Dep. at 98–99.) It was screened out because it improperly included grievances about correctional staff with grievances about medical staff. (Dep. at 99.) According to M. Voong, Chief of the Office of Appeals for the CDCR, an appeal that is screened out "has not been considered and, consequently, the appeals process has not been exhausted." (Decl. of M. Voong ("Voong Decl.") (ECF No. 19-8 at 38-40), ¶ 5.) Further, Voong declares that, "[w]hen an appeal is screened out, the inmate receives notice of that fact as well as the reasons why the appeal was not considered." (Id.) Although he was instructed to, plaintiff failed to resubmit a health care appeal regarding Long and Lahey. (Dep. at 99.)

Plaintiff also submitted an inmate appeal regarding Blackwell, which was reviewed at the second level. (Dep. at 95; Inmate Appeal (ECF No. 19-8 at 33-36).) However, he failed to submit this appeal to the third level. (Voong Decl. (ECF No. 19-8 at 39-40), ¶ 10.)

4

**B. Procedural Background**

On November 17, 2015, plaintiff filed his amended complaint. (ECF No. 10.) The court found that he stated a cognizable excessive force claim against Koelling and a cognizable deliberate indifference claim against Blackwell, Long, and Lahey. (June 8, 2016 Order (ECF No. 11) at 2.)

On May 12, 2017, defendants moved for summary judgment. (ECF No. 19.) They argue that summary judgment on plaintiff's excessive force claim is proper because Koelling used only *de minimis* force to prevent him from leaving the office and remove his handcuffs. (ECF No. 19-9 at 6.) Additionally, they assert that Koelling enjoys qualified immunity. (Id.) Furthermore, they argue that plaintiff failed to exhaust administrative remedies concerning his claim against Blackwell, Long, and Lahey. (Id. at 7.)

Plaintiff has opposed, in part, defendants' motion for summary judgment. (Reply (ECF No. 21).) He argues, cursorily and without citation to case law, that Koelling's force was excessive for the following reasons: (1) he was handcuffed when he turned to leave the room; (2) the door was closed; (3) no other inmates or staff were in the room; and (4) Koelling's force exacerbated his preexisting shoulder injury to the point that surgery was required. (Id. at 2.) However, he concedes that he did not exhaust administrative remedies for his claim against Blackwell, Long, and Lahey. (Id. at 3.)

**II. STANDARD OF REVIEW**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. Crawford-El v. Britton, 523 U.S. 574, 600 (1998); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–50 (1986); Nw. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471–72 (9th Cir. 1994). In essence, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

5

1    The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims
2    or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). Thus, the rule functions to
3    "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for
4    trial.'" Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R.
5    Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary
6    judgment practice, the moving party bears the initial responsibility of presenting the basis for its
7    motion and identifying those portions of the record, together with affidavits, if any, that it
8    believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323;
9    Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets
10   its burden with a properly supported motion, the burden then shifts to the opposing party to
11   present specific facts that show there is a genuine issue for trial. Anderson, 477 U.S. at 248;
12   Matsushita, 475 U.S. at 586–87; Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995)
13   (per curiam).
14   　　　A clear focus on where the burden of proof lies as to the factual issue in question is crucial
15   to summary judgment procedures. Depending on which party bears that burden, the party seeking
16   summary judgment does not necessarily need to submit any evidence of its own. When the
17   opposing party has the burden of proof on a dispositive issue at trial, the moving party need not
18   produce evidence which negates the opponent's claim. See, e.g., Lujan v. Nat'l Wildlife Fed'n,
19   497 U.S. 871, 885 (1990).
20   　　　Rather, the moving party need only point to matters which demonstrate the absence of a
21   genuine material factual issue. See Celotex, 477 U.S. at 324 (citation omitted) ("[W]here the
22   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment
23   motion may properly be made in reliance solely on the pleadings, depositions, answers to
24   interrogatories, and admissions on file."). Indeed, summary judgment should be entered, after
25   adequate time for discovery and upon motion, against a party who fails to make a showing
26   sufficient to establish the existence of an element essential to that party's case, and on which that
27   party will bear the burden of proof at trial. See id. at 322. In such a circumstance, summary
28   ////

judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in [Rule 56(a)], is satisfied." Id. at 323.

To defeat summary judgment, the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. Anderson, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. Id. If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations unsupported by evidence are insufficient to defeat the motion. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. Anderson, 477 U.S. at 248; Devereaux, 263 F.3d at 1076 (citations omitted). More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a reasonable juror "could return a verdict for [him] on the evidence presented." Anderson, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. See id. at 249, 255; Matsushita, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. Am. Int'l

Grp., Inc. v. Am. Int'l Bank, 926 F.2d 829, 837 (9th Cir. 1991) (Kozinski, J., dissenting) (citing Celotex, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. See Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

## III. ANALYSIS

### A. Blackwell, Long, and Lahey—Failure to Exhaust

Plaintiff alleges defendants Blackwell, Long, and Lahey were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

#### 1. Legal Standards for Exhaustion

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's . . . critical procedural rules," Woodford v. Ngo, 548 U.S. 81, 90 (2006). Thus, "to properly exhaust administrative remedies, prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [ ] rules that are defined . . . by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88).

In California, an inmate may appeal "any policy, decision, action, condition, or omission . . . having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). Inmates must complete three levels to exhaust the appeal process: (1) formal written appeal on CDCR Form 602; (2) second-level appeal to the institution head or designee; and (3) third-level appeal to the Director of the CDCR. Id. § 3084.7. The third level constitutes

////

8

the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies. Id. § 3084.7(d)(3).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." Bock, 549 U.S. at 204; see also id. at 216. To satisfy its burden, the defendant must show "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino v. Baca, 747 F.3d at 1172 (9th Cir. 2014) (en banc). "If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), overruled on other grounds by Albino, 747 F.3d 1162.

### 2. Discussion

Here, plaintiff does not dispute that his health care appeal was screened out because it improperly included grievances about correctional staff with grievances about medical staff. (Dep. at 99; supra p. 4.) Nor does he dispute that he failed to resubmit a health care appeal for Long and Lahey even though he had been instructed to. (Id.) Indeed, he concedes that he failed to exhaust administrative remedies regarding these defendants. (Supra p. 5.) Accordingly, his deliberate indifference claim should be dismissed without prejudice.

### B. Koelling—Excessive Force

Plaintiff alleges defendant Koelling used excessive force when he yanked plaintiff's right arm and when he removed the handcuffs upon plaintiff's return to his cell.

### 1. Legal Standards for Eighth Amendment Claim of Excessive Force

"When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment." Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002). To establish a claim for excessive force based on a prison official's use of force during a prison disturbance, the plaintiff must show that the officer applied the force maliciously and sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline. Hudson v. McMillian, 503 U.S. 1, 6 (1992).

However, "[not] every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9 (citation omitted). That is, "[n]ot every push or shove . . . violates a prisoner's

9

constitutional rights." Id. (citation omitted). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9–10 (citation omitted). Furthermore, "[prison] administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 6 (ellipses in original) (citation omitted).

### 2. Discussion

#### a. Grabbing Plaintiff's Arm

The evidence is insufficient for a reasonable juror to conclude that Koelling used force on plaintiff maliciously and sadistically - as required by Hudson - to harm him when he grabbed plaintiff's arm and yanked plaintiff away from the door. Plaintiff does not dispute that he turned to leave the room without permission. Therefore, Koelling was entitled to use some force to restore order. See Hudson, 503 U.S. at 6. Plaintiff contends that Koelling's actions were unnecessary because he was handcuffed and the door was closed. However, Koelling states that he had been trained to use reasonable physical force to prevent an inmate in his custody from leaving his presence, which included "grasping the inmate's arm." (Koelling Decl. (ECF No. 19-2), ¶ 6.) Further, he states that such training served to prevent the inmate from escaping and other inmates from attacking the restrained inmate. (Id.)

Plaintiff argues that he could not have escaped because he was handcuffed and that he was not in danger because other inmates were not present. But whether an officer's force is malicious and sadistic turns in part, on his subjective mental state. Hudson, 503 U.S. at 8–9. Even if plaintiff could not have escaped and faced no danger, the evidence still supports the inference that Koelling subjectively believed that he had to grab and yank plaintiff to carry out his duties. Moreover, he was not told about plaintiff's preexisting shoulder injury. This fact also undercuts the inference that malice and sadism motivated his actions.

Plaintiff contends that the fact that he had to have surgery on his right shoulder supports a reasonable finding that Koelling's force was excessive. However, while courts may consider the

10

extent of an inmate's injury to determine whether an officer's force is excessive, this consideration is not dispositive. Hudson, 503 U.S. at 7. Moreover, plaintiff's own evidence shows that, in November 2011, a correctional officer twisted his arm behind his back and injured his right shoulder. (See Exs. to Reply (ECF No. 21 at 64, 67, 69, 71).)

Plaintiff responds that Koelling aggravated this injury to the point that he had to have surgery. However, other than his own speculation, he has proffered no evidence, medical or otherwise, to substantiate this assertion. See Nelson v. Pima Cmty. College, 83 F.3d 1075, 1081–82 (9th Cir. 1996) (citation omitted) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment."). For these reasons, the evidence is insufficient for a reasonable juror to conclude that Koelling used force maliciously and sadistically to harm plaintiff. Accordingly, summary judgment on the issue of excessive force when Koelling grabbed plaintiff's shoulder should be granted in his favor.[3]

### b. Removal of Handcuffs

The question of whether Koelling's removal of the handcuffs was excessive is a closer one. Plaintiff concedes that Koelling did not intentionally apply the handcuffs backwards. He also concedes that Koelling had to manipulate his hands somewhat to access the keyhole. However, plaintiff contends Koelling did not need to continue bending plaintiff's wrists and pulling up on his arms. According to plaintiff, if Koelling had bent down himself, he could have placed the key in the handcuffs without continuing to cause plaintiff pain. (Dep. at 81.) Plaintiff told Koelling that his actions were hurting. (Id.) But, Koelling "does nothing except what he was doing to get his cuffs off." (Id.)

In his declaration, Koelling states that when removing plaintiff's handcuffs "I manipulated his hands, wrists and arms only to the extent necessary to properly apply and remove the handcuffs." (Koelling Decl. (ECF No. 19-2), ¶ 5.)

To establish excessive force, a plaintiff must show either a demonstrable injury or that he complained about use of force, here the tightness of the handcuffs and the bending of his wrists

---

[3] Because Koelling did not violate plaintiff's Eighth Amendment rights, the court need not address the question of qualified immunity. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

and arms, and was ignored. See Candler v. Mallot, No. 2:14-cv-0363 GEB KJN P, 2015 WL 2235674, at *8 (E.D. Cal. May 12, 2015) (citing Dillman v. Tuolumne County, No. 1:13-CV-0404 LJO SKO, 2013 WL 1907379, at *8 (E.D. Cal. 2013)), rep. and reco. adopted, 2015 WL 3795667 (E.D. Cal. June 17, 2015); Weldon v. Conlee, No. 1:13-cv-0540-LJO-SAB, 2015 WL 1811882, at *14 (E.D. Cal. Apr. 21, 2015), aff'd, 684 F. App'x 612 (9th Cir. 2017); Gause v. Mullen, No. CV 12-1439-PHX-RCB(MEA), 2013 WL 5163245, at *9 (D. Ariz. Sept. 12, 2013); Nguyen v. San Diego Police Dept., No. 11cv2594-WQH-NLS, 2013 WL 12114518, at *9 (S.D. Cal. Aug. 15, 2013); Bashkin v. San Diego County, No. 08cv1450-WQH-WVG, 2010 WL 2010853, at *7 (S.D. Cal. May 20, 2010); cf. LaLonde, 204 F.3d at 952; Palmer v. Sanderson, 9 F.3d 1433, 1434-36 (9th Cir. 1993).[4]

As stated above, plaintiff does not establish that anything Koeller did caused the exacerbation of his shoulder injury. However, plaintiff does contend that he told Koeller he was in pain, but Koeller continued to bend his wrists and arms. Because there is an issue of material fact about whether Koeller was required to bend plaintiff's wrists and arms in order to remove the handcuffs, the court finds Koeller has not met the standards for summary judgment with respect to this allegation of excessive force.

A jury could credit plaintiff's account that his wrists and arms were being bent in a way that caused him pain and that defendant failed to attempt to remove the handcuffs in a less painful way. Whether Koeller's actions in removing the handcuffs were reasonable or whether he acted maliciously in refusing to remove the handcuffs in a different manner is a disputed factual issue that should preclude summary judgment. See Smith v. City of Hemet, 394 F.3d 689, 700-01 (9th Cir. 2005) ("Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, . . . summary judgment . . . in

---

[4] Some of the cited cases considered the question of excessive force under the Fourth Amendment's right to be free from an unreasonable seizure. Courts have applied Fourth Amendment excessive force standards in Eighth Amendment excessive force cases. See Candler, 2015 WL 2235674, at *8; Buckley v. Evans, No. 2:02-cv-1451-JKS, 2007 WL 2900173, at * (E.D. Cal. Sept. 28, 2007) (noting similarity between analyses of Fourth and Eighth Amendment claims for excessive force in use of handcuffs).

12

excessive force cases should be granted sparingly.") Further, because Koelling has not met his burden of demonstrating the absence of a genuine issue of material fact with respect to the issue of the removal of the handcuffs, summary judgment based on qualified immunity is inappropriate. See Adickes v. Kress & Co., 398 U.S. 144, 157 (1970); see also Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993) (if there is a genuine dispute as to the "facts and circumstances within an officer's knowledge," or "what the officer and claimant did or failed to do," summary judgment is not appropriate).

**IV.    CONCLUSION**

For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 19) be granted in part and denied in part. Consequently:

1. Plaintiff's excessive force claim against Koelling for grabbing his arm should be dismissed with prejudice;
2. Plaintiff's deliberate indifference claim against Blackwell, Long, and Lahey should be dismissed without prejudice for failure to exhaust administrative remedies; and
3. This case should proceed on plaintiff's excessive force claim against Koelling for the removal of his handcuffs.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. The parties

////
////
////
////
////

are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated: September 26, 2017

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:11/9
DLB1/prisoner-civil rights/jone1372.msj final